HARDY, Judge.
This is a suit on account which was instituted by plaintiff for the purpose of collecting the price of certain described machinery which was sold to and for the use of the defendant. In answer defendant averred that the machinery furnished by plaintiff was supplied in connection with a contract for the drilling and equipment of a water well on defendant’s premises. Defendant alleged that this contract had been undertaken by plaintiff and one W. C. Barnwell, either as a partnership enterprise or a joint venture; that defendant relied upon the representations of the said La-Borde and Barnwell that the well when completed would produce 90 gallons of good water per minute; that defendant agreed to pay a total of $2,000 for the drilling and equipment of such well; that the well when completed was totally unsatisfactory and as a result defendant was ¡¡entitled to a rescission of the contract. Defendant then assumed the position of plaintiff in reconvention and demanded the recovery of the sum of $400 allegedly paid as an advance on his obligation. Defendant sought and procured an order impleadr ing W. C. Barnwell as a party to the suit. To this demand Barnwell interposed no objection and made an appearance by filing a pleading which we can only designate as an answer to the defendant Woodward’s answer to plaintiff’s, petition, and in which he asserted a reconventional demand against Woodward for recovery of an alleged balance in the sum of $761.50 in payment of his drilling operations. Upon the basis of these complex and unusual pleadings trial wa's had, resulting in judgment in favor of plaintiff as prayed, further judgment rejecting the reconventional demands of Woodward against LaBorde and Barnwell, and still further judgment rejecting Barnwell’s reconventional demand against Woodward. From this judgment Woodward and Barnwell have appealed.
The facts as developed by the evidence on trial indicate that, in or about the month of July, 1954, the defendant, Cecil Woodward, being desirous of procuring an additional supply of water for the irrigation of his home premises in Bossier City, Louisiana, contacted Barnwell with respect to the drilling of a water well, and also, at Barnwell’s suggestion, contacted plaintiff, LaBorde, with reference *177 to the purchase of a pump and other machinery necessary to the completion and operation of such water well. It is shown that Barnwell and LaBorde occupied offices in the same building in Bossier City; that Barnwell rented office space from LaBorde; that Barnwell, with LaBorde’s permission, used the latter’s telephone, and that the two were engaged in enterprises, that is, the drilling of water wells by Barnwell and the sale of machinery for the operation of such wells by LaBorde, which frequently enabled each to influence his customers to transact business with the other. Aside from this there is no evidence in the record which would bear upon the relationship existing between Barnwell and LaBorde, and the evidence completely fails to justify any conclusion of the existence of a partnership or a joint venture in this particular undertaking. There is no question as to the correctness of the conclusion that though both Barnwell and LaBorde were doing business with Woodward there was no association of any nature which would lead to a joint or solidary responsibility as between them. Woodward’s negotiations with Barnwell were exclusively concerned with operations for the drilling of a water well, and his business with LaBorde was concerned only with the purchase of machinery for the operation of such well. In other words, it is clear from the evidence that there were no joint relations between LaBorde and Barnwell, nor can .we find any basis for justification of Woodward’s contention that he entered into one contract for the drilling and equipment of the well. On the contrary it is established that Woodward’s negotiations with the other parties involved were entirely separate and distinct one from the other.
Nor do we think that the testimony sustains Woodward’s contention that Barnwell guaranteed the completion of a well which would produce 90 gallons of good water per minute. The testimony does not show that there was any agreement or understanding, much less a guarantee on Barn-well’s part, with reference to any production rate. It was established that when Woodward originally consulted the plaintiff, LaBorde, about the purchase of a pump he specified his wish for a pump capable of handling 90 gallons per minute. When informed by LaBorde that he did not carry a pump of this size Woodward contacted another dealer, but shortly thereafter he resumed his negotiation with LaBorde and eventually settled upon the purchase of a pump capable of handling some 40 to 60 gallons per minute.
With reference to the agreement between Woodward and Barnwell'we think Woodward has-failed to establish any guarantee of a specified rate of production of water. There is a square conflict between the two as to the basis of payment, but ,we think the facts prevail in favor of Barnwell’s assertion that the contract for his undertaking was based on a consideration of $6.25 per foot for drilling plus the cost of the pipe and the gravel packing.
The well was drilled to a total depth of 140 feet and 100 feet of six-inch pipe was set with gravel packing. 'Upon completion the well produced at a rate of between 5 and 10 gallons per minute; there was no steady head of water; a disproportionate amount of sand was present, which had the effect of constantly causing the abrasion of the pumping equipment, and there is no question as to the generally unsatisfactory performance of the well with respect to the purpose for which it was intended. Whether or not this failure was chargeable to the fault of Barnwell we cannot determine from the state of the record as it exists. There is some question as to the necessity of drilling to a depth of 140 feet, and there is also a serious question as to whether Woodward might not have taken some steps, particularly the setting of a screen for the purpose of excluding sand which could have been done at a reasonable additional expense, which would have assured the production of a satisfactory quantity of water.
We cannot determine upon what basis the district judge reached a conclusion which permitted a partial rescission in *178 favor of Woodward, and a partial recovery in favor of Barnwell. In other words, if Barnwell was at fault in failing to carry out his contractual obligations, surely Woodward would be entitled to'complete rescission of the contract and the return of the $400, which he had advanced to Barnwell. On the other hand, if Barnwell was free of fault, then clearly he would be - entitled to. the recovery of the full contract price. It follows that this portion of the judgment was in error and, as we have above observed, we are unable -to pronounce judgment with respect to these opposed rights of the two parties on the basis of the record as it now stands.
For the reasons assigned the judgment in favor of plaintiff, LaBorde, is affirmed, and the remainder of the judgment from which appealed is annulled and set aside, and there is judgment of nonsuit with reference to the demands of C. V. Woodward 'and W. C. Barnwell, one against the other.
Costs of this appeal are taxed equally against appellants Woodward and Barn-well, and all other costs are assessed against the defendant, C. V. Woodward.